IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT LEE SIMMONS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1516-B-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be granted and the decision of the Commissioner be affirmed.

**I. BACKGROUND**

**A.    Procedural History**

Robert Lee Simmons seeks judicial review of a final decision by the Commissioner of Social Security denying his claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (Act). On July 3, 2008, Plaintiff applied for SSI, claiming that he had been disabled since October 31, 2007, due to asthma, psoriasis, heart problems, anemia, neuropathy in his legs and hands, foot problems, pain in his legs, back and right shoulder, mental problems, and scoliosis. (Tr. at 29, 129, 144).[1] His application was denied initially and on

---

[1] "Tr." refers to the transcript of the administrative proceedings.

1

reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 55-58, 60-65). On July 27, 2009, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 4-6, 9-19). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-3). Plaintiff timely appealed the Commissioner's decision to the United States District Court under 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on January 12, 1964, and was 45 years old at the time of the ALJ's decision. (Tr. at 7-16, 22, 99). He has a high school education and prior work experience as a dietary aide at a nursing home and as a fast food worker. (Tr. at 16; 44-45).

    **2.     Medical Evidence[2]**

The entirety of Plaintiff's medical records concerning his mental impairments comes from Dallas Independent School District (DISD) and concerns Plaintiff's assessment from 1977-1981. (Tr. at 175-186). On October 6, 1977, when Plaintiff was 13 years old, he was re-evaluated for special education. (Tr. at 177). Plaintiff's teachers reported that he was performing at a third grade level in reading and spelling, and between a first and second grade level in math. (Tr. at 177). His teachers also reported that his interactions with both peers and adults were "good." (Tr. at 177). A Wechsler Intelligence Scale for Children Revised (WISC-R) was administered to Plaintiff and calculated his verbal IQ at 65, his performance IQ at 82, and his overall IQ at 71.

---

[2] Although the record contains other medical evidence, the Court only recites the medical history relevant to the issues Plaintiff raises in this appeal.

(Tr. at 181). The evaluation indicated that, at the time, Plaintiff's level of intellectual functioning was within the low borderline range overall, his verbal skills were grossly impaired, and his nonverbal skills were only slightly below average. (Tr. at 176-77). Performance on verbal tasks ranged from defective to dull normal, and from borderline to bright normal on nonverbal tasks. (Tr. at 176).

In December 1980, at the age of 16, Plaintiff was again administered the WISC-R and was determined to be in the borderline range of intelligence, with a full scale IQ of 73. (Tr. at 178). Plaintiff's verbal IQ score was a 70 and his performance IQ score was 80. (Tr. at 178). The results indicated Plaintiff had good immediate auditory memory, but his biggest weakness was his ability to rapidly and accurately perform a copying task. (Tr. at 178).

In 1981, at the age of 17, Plaintiff was administered another set of tests. (Tr. at 183-86). On the Detroit Tests of Learning Aptitude, he obtained a motor speed equivalent to age 12.0, while his auditory attention span was at age 8.11 and his visual attention span was at age 8.0, which represented significant disabilities in motor speed, auditory and visual memory. (Tr. at 183). Severe disabilities were seen on the Woodcock-Johnson Test with regard to reading cluster, mathematics cluster, written language, and knowledge cluster. (Tr. at 184). On the visual-motor integration test, Plaintiff achieved an age equivalent of 8.7. (Tr. at 185).

    **3.**        **Hearing Testimony**

The ALJ held a hearing on June 24, 2009, where Plaintiff, a vocational expert, and a medical expert testified. (Tr. at 19-20). At the hearing, Plaintiff was not represented by counsel and stated that he wished to represent himself. (Tr. at 21). Dr. Barbara Felkins, the medical expert, opined that based on the record of Plaintiff's impairments, said impairments, neither

3

singularly or in combination, met or equaled a medical listing. (Tr. at 23). Dr. Felkins further testified that Plaintiff is not retarded, but does have some reading and math problems. (Tr. at 40). Based on the statement in the record that Plaintiff's "back pain did not limit his activities," Dr. Felkins did not believe there was an imminent need for surgery. (Tr. at 41). Dr. Felkins concluded that she agreed with the state's assessment of a light Residual Functioning Capacity (RFC). (Tr. at 42).

Plaintiff testified that he is not married and does not have children living with him. (Tr. at 23). Plaintiff averred he is a "little slow at reading with a little slow at writing." (Tr. at 24). Plaintiff stated he can read simple sentences and has a driver's license, but that when he took his driver's license test, he had help reading some of the questions. (Tr. at 24). At the time of the hearing, Plaintiff was 5' 6" tall and weighed 235 to 240 pounds, which represented a recent ten-pound weight gain. (Tr. at 24-25). Plaintiff further testified that he lives in a one-story house with his mom and helps with the housework – including taking out the trash, cutting the lawn, cleaning the refrigerator, and washing the dishes. (Tr. at 33-34).

Plaintiff was not currently working, but had worked at Texas Corney Dog at the Texas State Fair in each of the previous six years, for about a month each time, including after the alleged date of disability. (Tr. at 24-26). Plaintiff worked over eight hours a day, was mostly on his feet, and his duties included cooking, selling, operating, and stocking the stand. (Tr. at 27, 36). Plaintiff's problems while on the job were shoulder and back pain, and with Plaintiff's psoriasis, the heat would make his skin itch. (Tr. at 27).

Plaintiff stated he cannot hold down a full-time job because of his back problems. (Tr. at 28). Plaintiff also said he suffers from anemia and asthma. (Tr. at 29). Plaintiff complained of

4

back pain from his shoulders down to his legs, but testified that he has never had back surgery or steroid injections; however, he indicated his doctors were contemplating back surgery. (Tr. at 30-31). Plaintiff rated his pain as a six or seven on a scale of one to ten. (Tr. at 33). Plaintiff averred he could only carry about five pounds, could only be on his feet for 30 to 45 minutes at a time, and could only sit for an hour and stand for an hour in an eight-hour workday. (Tr. at 34-35).

Molly Malloy-Kelly, a vocational expert, was the last to testify. Ms. Kelly said there was no evidence of work at substantial gainful activity and that Plaintiff's past work experience has in general been in the food industry. (Tr. at 43). Ms. Kelly categorized Plaintiff's prior work as medium, unskilled, and light. (Tr. at 44). When given a hypothetical that encompassed the ALJ's RFC determination set out below, Ms. Kelly opined Plaintiff could not perform his past relevant work, but could perform jobs at the light, unskilled level including assembler, cafeteria attendant, and housekeeper/cleaner. (Tr. at 47-49).

**C.** **ALJ's Findings**

In his decision dated July 27, 2009, the ALJ found Plaintiff had not engaged in any substantial, gainful activity since July 2, 2008 – the alleged onset date. (Tr. at 12). Plaintiff had the severe impairments of anemia, asthma, peripheral neuropathy, psoriasis, back disorder, obesity, and major depressive disorder. (Tr. at 12). However, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. (Tr. at 12-16). Plaintiff had the RFC to perform light work, in that he could walk and stand for six hours out of an eight-hour day, and lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. at 13). The ALJ further found Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and carry. (Tr. at 13-14).

However, Plaintiff could not climb ladders, ropes, and scaffolds, and Plaintiff must avoid unprotected heights and even moderate exposure to temperature extremes, wetness, dust, gas, fumes, and poor ventilation. (Tr. at 14). In addition, the ALJ held that Plaintiff retained the ability to understand and carry out simple instructions, Plaintiff's interactions with co-workers and supervisors should be limited to that incidental to the work performed, and Plaintiff could adapt to a routine work environment. (Tr. at 14). The ALJ concluded that, although Plaintiff could not perform his past relevant work, he was not disabled as defined by the Act because he could perform other jobs that exist in significant numbers in the national economy. (Tr. at 16).

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44

(5th Cir. 1988).

The scope of judicial review of a decision under the SSI program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for Disability Insurance Benefits are identical to those governing the determination under a claim for SSI. *Id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id.*

**2.    Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual

>functional capacity must be considered to determine if work can be
>performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision, find that he is disabled, and remand for an award of benefits. (Doc 17 at 19). In the alternative, Plaintiff requests remand for further consideration and determination. (Doc. 17 at 19). The Commissioner argues for affirmance, stating that "substantial evidence of record supports his decision." (Doc. 21 at 20).

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at

*11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**B.     Issues for Review**:

*1. Did the ALJ fail to properly evaluate Plaintiff's claim at Step 3?*

Now represented by counsel, Plaintiff avers the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate his claim at Step 3 of the sequential evaluation process. (Doc. 17 at 11-16). Specifically, Plaintiff argues that he meets Listing 12.05C, and that the ALJ failed to consider whether he met that listing. (Doc. 17 at 12). The Court concludes that the ALJ's Step 3 determination, finding that the Plaintiff's impairments did not meet or equal a listed impairment, is supported by substantial evidence.

Although an ALJ has a duty to analyze Plaintiff's impairments under every applicable listing, the Court of Appeals for the Fifth Circuit has conclusively held that an ALJ's failure to consider a specific listing is harmless if the record shows such listing is not met. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007). In order to meet Listing 12.05C, a claimant must have: (1) significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (before the age of 22), (2) a valid verbal performance, or full scale IQ of 60 through 70, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.

Even though the ALJ failed to consider whether Plaintiff met Listing 12.05C, this error is harmless, as the record shows such listing is not met. Plaintiff relies on IQ scores from when he

9

was 13 and 16 years old. (Doc 17 at 10-11). Although Plaintiff's verbal IQ score of 70 at the age of 16 may be deemed valid,[3] an ALJ may also consider whether the IQ scores are consistent with the claimant's daily activities, and may reject IQ scores if they are inconsistent with the remainder of the record. *See Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1994) (finding IQ results invalid in light of work experience, education, and demeanor at the hearing); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D(10).

In an unpublished opinion, the Court of Appeals for the Fifth Circuit considered a situation very similar to the present one.[4] In that case, the plaintiff argued the ALJ did not properly consider his school records that indicated an IQ score of 69, and therefore failed to address Listing 12.05C. *Bordelon v. Shalala*, 41 F3d 661, 1994 WL 684574, at *1 (5th Cir. 1994). In *Bordelon*, as here, the ALJ did not specifically find the IQ score to be invalid. *Id*. However, the appellate court held that the ALJ did not commit error because (1) the Plaintiff did not claim lifelong retardation or point the ALJ to his IQ scores; and (2) the school records did not provide a valid IQ score because they were too removed from the time of his disability claim and the score indicating retardation was belied by other facts in the record. *Id*. The Court further explained that the fact that the plaintiff was able to work a variety of jobs and care for his two small children was relevant to the validity of the IQ scores. *Id*.

---

[3] IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D(10).

[4] While this unpublished opinion is of limited precedential value, it is nonetheless instructive in this case where the factual and legal issues are so closely analogous.

In this case, the nearly 30-year-old verbal IQ score found in the school records indicate Plaintiff suffered from low intellectual functioning during the developmental period, but the score is too remote in time to be valid proof Plaintiff suffered from retardation at the time of the claimed onset of his disability. *See Bordelon*, 1994 WL 684574, at *1. Plaintiff offered no more recent proof of his IQ. Moreover, just as in *Bordelon*, the evidence of Plaintiff's abilities belies his verbal IQ score of 70. The record reveals that Plaintiff performs various forms of housework, including taking out the trash, cutting the lawn, cleaning the refrigerator, and washing the dishes. (Tr. at 33-34). Plaintiff can read simple sentences, graduated from high school, and has a driver's license. (Tr. at 16, 34). The state agency medical consultant opined that Plaintiff was able to perform all activities of daily living without assistance. (Tr. at 207). In addition, Plaintiff worked various food service jobs for approximately 15 years prior to the hearing – as a dietary aide at a nursing home, a fast food restaurant worker, and at a corn dog stand during the Texas State Fair, where he was wholly responsible for operating the corn dog stand. (Tr. at 25-27, 43, 45, 135). In fact, Plaintiff stated that he quit his last job at the Texas State Fair due to his physical, not mental, impairments. (Tr. at 27-28).

Finally, although the ALJ never specifically addressed Listing 12.05C, he concluded that Plaintiff did not suffer from mental retardation. Based on the record and the testimony from Dr. Felkins, however, the ALJ stated that Plaintiff's "school records indicated the claimant was not retarded, but did have problems in reading and math. The claimant is learning disabled." (Tr. at 14). Thus, the record indicates that the ALJ implicitly considered listing 12.05 in his ruling.

Therefore, the ALJ's Step 3 determination, finding that the Plaintiff's mental and physical impairments did not meet or equal a listed impairment, is supported by substantial evidence as

outlined above. Accordingly, Plaintiff's claim that the ALJ did not consider whether he met Listing 12.05C is without merit.

*2. Did the ALJ err by failing to require Plaintiff to undergo IQ testing?*

In his reply brief, Plaintiff argues for the first time that the ALJ failed to develop the record by not scheduling Plaintiff for an evaluation to determine a current IQ score. (Doc. 22 at 3-4). It should be noted that by not raising the issue in his initial brief, Plaintiff has, effectively waived it. Nonetheless, the claim lacks merit. In *Bordelon*, the Court also considered this issue and concluded that there was no error in the ALJ's failure to order that Bordelon take a current IQ examination. *Bordelon*, 1994 WL 684574, at *2. The Court further held that the "decision to order an examination is discretionary, and sufficient evidence as to Bordelon's present mental condition existed in the record so that another IQ examination was not necessary." *Id.*, citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) ("'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." (emphasis in original)). Just as in *Bordelon*, the undersigned concludes that sufficient evidence of Plaintiff's mental condition exists in the record of this case so that it was unnecessary for the ALJ to require another IQ examination.

*3. Did the ALJ fail to consider all of the functional limitations established in the Record?*

Plaintiff avers that the ALJ's determination is not supported by substantial evidence because the ALJ failed to consider all the functioning limitations established in the record. (Doc. 17 at 16-18). Further, Plaintiff argues the ALJ failed to present the vocational expert with the limitations he found in Plaintiff's concentration, persistence, and pace, only limiting his

hypothetical to Plaintiff's ability to understand "simple instructions." (Doc. 17 at 17). However, the Court finds that the ALJ did consider all of the functional limitations established by the evidence, and that the ALJ's determination is supported by substantial evidence.

When the record reflects that a claimant was able to work for years despite his alleged disabling impairments, the ALJ may properly discount those allegations. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). In addition, the ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. 20 CFR § 404.1546(c). A hypothetical question is sufficient where it reasonably incorporates all disabilities recognized by the ALJ in his RFC finding. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). In *Bordelon*, the Court concluded that the ALJ properly analyzed the plaintiff's impairments where a vocational expert testified that the plaintiff could perform jobs existing in the economy, despite the impairments of difficulty dealing with people, inability to follow complex instructions, and vision difficulties. *See Bordelon*, 1994 WL 684574, at *2.

Plaintiff points to his test results from DISD to show specific limitations in, *inter alia*, verbal skills, motor dexterity, and visual perception. Considering the record as a whole, the ALJ properly took into account all Plaintiff's impairments. Although the ALJ did not find Plaintiff's limitations to be severe impairments, he nonetheless took them into account by restricting the types of jobs for which Plaintiff qualifies to those that only require the ability to understand and carry out simple instructions, involve a routine work environment, and limit Plaintiff's interactions with coworkers and supervisors to interactions incidental to the work performed. (Tr. at 14). The ALJ's conclusion is consistent with the vocational expert's testimony that Plaintiff could perform jobs existing in the economy despite these limitations. (Tr. at 47-49). Also, as

indicated previously, Plaintiff's school test results are inconsistent with the remainder of the record. The record reveals that Plaintiff has previously performed more complex jobs than those contained in the ALJ's RFC determination, including the full operation of a corn dog stand, which Plaintiff averred he only quit due to his physical limitations. (Tr. at 27-28, 43-50). Therefore, taking the record as a whole, the ALJ properly considered Plaintiff's functional limitations, and the ALJ's hypothetical adequately encompassed all the limitations he found.

### III. CONCLUSION

It is recommended that Defendant's Motion for Summary Judgment (Doc. 20) be GRANTED, Plaintiff's Motion for Summary Judgment (Doc. 17) be DENIED, and the decision of the Commissioner be **AFFIRMED.**

**SO RECOMMENDED** on March 11, 2011.

_____
**RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE